Qinyu Fan, Esq.
Hang & Associates, PLLC
136-20 38th Avenue, Suite 10G
Flushing, NY 11354
Fax: (718) 353-6288
Email: qfan@hanglaw.com
*Attorney for Plaintiffs and proposed FLSA Collective*

**UNITED STATES DISTRICT COURT DISTRICT
OF NEW JERSEY**

| | |
|---|---|
| Wei Jun Ji and Hsi Chieh Chen, individually and on behalf of all other employees similarly situated,<br><br>    Plaintiffs,<br><br>    - against -<br><br>Lan Ramen, Inc., Duo Jia Xiao a/k/a Jessica Xiao and "Kenny" Doe,<br><br>    Defendants. | Case No.<br><br>**COLLECTIVE ACTION COMPLAINT AND JURY TRIAL DEMAND** |

Plaintiffs Wei Jun Ji and Hsi Chieh Chen ("Plaintiffs"), on their own behalves and on behalf of all others similarly situated, by and through their undersigned attorneys, Hang & Associates, PLLC, hereby file this complaint against the Defendants Lan Ramen, Inc., Duo Jia Xiao a/k/a Jessica Xiao and "Kenny" Doe (collectively "Defendants"), allege and show the Court the following:

**INTRODUCTION**

1.    This is an action brought by Plaintiffs on their own behalves and on behalf of similarly situated employees, including kitchen workers, waiters and waitress, and all other non-exempt employees of the Defendants, alleging violations of the Fair Labor Standards Act, 29 U.S.C. § 201

et seq. ("FLSA") and the New Jersey Wage and Hour Law, N.J.S.A.§34:11-56 et seq. ("NJWHL" hereinafter), arising from Defendants' various willful and unlawful employment policies, patterns and/or practices.

2.    Upon information and belief, Defendants have willfully and intentionally committed widespread violations of the FLSA and NJWHL by engaging in a pattern and practice of failing to pay their employees, including Plaintiffs, compensation for all hours worked, overtime compensation for all hours worked over forty (40) each week, and improper retention of tips.

3.    Plaintiffs allege pursuant to the FLSA, that they are entitled to recover from the Defendants:  (1) unpaid overtime wages,  (2) improper retention of tips, (3) liquidated damages, (4) prejudgment and post-judgment interest; and (5) attorneys' fees and costs.

4.    Plaintiffs further allege pursuant to NJWHL  that they are entitled to recover from  the Defendants: (1) unpaid overtime wages,  (3) improper retention of tips, (4) liquidated damages, (5) prejudgment and post-judgment interest; and (6) attorneys' fees and costs.

## JURISDICTION AND VENUE

5.    This Court has original federal question jurisdiction over this controversy under 29 U.S.C. §216(b), 28 U.S.C. § 1331, and has supplemental jurisdiction over the NJWHL claims pursuant to 28 U.S.C. § 1367(a).

6.    Venue is proper in the United States District Court for the District of New Jersey pursuant to 28 U.S.C. §§ 1391(b) and (c), because Defendants conduct business in this District, and the acts and omissions giving rise to the claims herein alleged took place in this District.

## PLAINTIFFS

7.    Plaintiff Wei Jun Ji ("Plaintiff Ji" or "Mr. Ji") is a resident of New York State and was employed by the Defendants' restaurant, Lan Ramen, Inc. (hereinafter, "Lan Ramen" or "the restaurant") located at 4-6 Hulfish St, Princeton, NJ 08542.

8.    Plaintiff Ji was hired as a waiter, from on or around May 1, 2018 to on or around October 15, 2019, and then from on or around November 1, 2019 to on or around December 15, 2019.

9.    Plaintiff Hsi Chieh Chen ("Plaintiff Chen" or "Mr. Chen") is a resident of New York State and was employed by the Defendants' restaurant, Lan Ramen,Inc., ("Lan Ramen" hereinafter) located at 4-6 Hulfish St, Princeton, NJ 08542.

10.    Plaintiff Chen was hired as a fry wok cook, from on or around May 15, 2018 to February 15, 2020.


## DEFENDANTS

11.    Upon information and belief, Defendant Lan Ramen, Inc. had gross sales in excess of Five Hundred Thousand Dollars ($500,000) per year. Upon information and belief, Lan Ramen purchased and handled goods moved in interstate commerce.

12.    Lan Ramen has about ten (10) full-time employees and two (2) to three (3) part-time employees. Among them are six (6) full-time kitchen workers, four (4) full-time waiters, and two (2) to three (3) part-time waiters.

13.    Upon information and belief, Defendant Duo Jia Xiao a/k/a Jessica Xiao ("Defendant Xiao" or "Ms. Xiao") is the registered officer, and the owner of Lan Ramen at 4-6 Hulfish St, Princeton, NJ 08542 and participated in the day-to-day operations of Lan Ramen. She interviewed Plaintiffs and determined Plaintiff's salary rate. During Plaintiff's employment in Lan Ramen, Ms.

Xiao supervised them, and handled Plaintiffs' payrolls. She personally gave paychecks or cash to Plaintiffs for most of the time.

14.     Upon information and belief, Defendant "Kenny" Doe ("Defendant Kenny" or "Kenny") is the manager, and the owner of Lan Ramen at 4-6 Hulfish St, Princeton, NJ 08542 and participated in the day-to-day operations of Lan Ramen. Defendant Kenny is Ms. Xiao's husband. During Plaintiff's employment in Lan Ramen, Defendant Kenny supervised them. He also handled Plaintiffs' payrolls and personally gave paychecks or cash to Plaintiffs when Ms. Xiao is not available.

15.     Thus, Defendants Xiao and Kenny acted intentionally and maliciously in management and is an employer pursuant to FLSA, 29 U.S.C. §203d, and regulations promulgated thereunder, NJWHL §12:56-2.1 and the regulations thereunder. Therefore, Defendants Xiao and Kenny are jointly and severally liable with Lan Ramen.

16.     At all relevant times, the work performed by Plaintiff was directly essential to the business operated by Lan Ramen.

17.     At all relevant times, Defendants knowingly and willfully failed to pay Plaintiffs their lawfully earned overtime compensation, and made improper retention of employees' tips, in violation of the FLSA and NJWHL.

18.     Plaintiffs have fulfilled all conditions precedent to the institution of this action and/ or conditions have been waived.

## **STATEMENT OF FACTS**

19.     Defendants committed the following alleged acts knowingly, intentionally and willfully.

20.    Defendants knew that the nonpayment of overtime compensation, and the improper retention of Plaintiff's tips would financially injure Plaintiffs and similarly situated employees and violate state and federal laws.

### *Plaintiff Ji*

21.    From on or around May 1, 2018 to on or around October 15, 2019, and then from on or around November 1, 2019 to on or around December 15, 2019, Plaintiff Ji was hired by Defendants to work as a waiter for Defendants' restaurant business located at 4-6 Hulfish St, Princeton, NJ 08542.

22.    From on or around May 1, 2018 to on or around May 14, 2018, Plaintiff Ji worked seven (7) days a week. Plaintiff has the same schedule on every working day. He would start working at the restaurant at 11:00 a.m., and finish his work at 10:00 p.m. Plaintiff Ji would take an one-hour break between 3 p.m. and 5 p.m. For lunch and dinner, Plaintiff Ji would spend less than half an hour. Therefore, from on or around May 1, 2018 to on or around May 14, 2018, Plaintiff worked in total approximately seventy (70) hours per week.

23.    From on or around May 15, 2018 to on or around December 31, 2018, Plaintiff Ji worked six (6) days a week on the same schedule from 11:00 a.m. to 10 p.m. with a one-hour break. Plaintiff Ji usually took Monday off. Therefore, from on or around May 15, 2018 to on or around December 31, 2018, Plaintiff Ji worked in total sixty (60) hours per week.

24.    From on or around January 1, 2019 to on or around October 15, 2019, Plaintiff Ji worked five and a half (5.5) days a week on the same schedule from 11:00 a.m. to 10 p.m. with a one-hour break, except for Thursday. Plaintiff Ji usually took Wednesday and a half day of Thursday off. On Thursday, Plaintiff Ji would start working 11:00 a.m. and finish work at approximately 4 p.m.

without taking a break. Therefore, from on or around January 1, 2019 to on or around October 15, 2019, Plaintiff Ji worked in total fifty-five (55) hours per week.

25.    From on or around November 1, 2019 to on or around December 15, 2019, Plaintiff Ji worked five (5) days a week on the same schedule from 11:00 a.m. to 10 p.m. with a one-hour break, except for Thursday. Plaintiff Ji usually took Monday and Tuesday off. Therefore, from on or around on or around November 1, 2019 to on or around December 15, 2019, Plaintiff Ji worked in total fifty-five (55) hours per week.

26.    From on or around October 15, 2019 to on or around November 1, 2019, Plaintiff Ji quitted Lan Ramen temporarily because he noticed that he was paying less compared to the time he started working at Lan Ramen.

27.    From on or around May 1, 2018 to on or around December 31, 2018, Plaintiff Ji was paid approximately $4000 per month. Defendants paid Plaintiff twice a month in a combination of cash and checks.

28.    From on or around January 1, 2019 to on or around October 15, 2019, and then from on or around November 1, 2019 to on or around December 15, 2019, Plaintiff Ji was paid approximately $3600 per month. Defendants paid Plaintiff twice a month in checks.

29.    At all relevant times, the salaries Plaintiff Ji received represented his hourly salaries plus tips.

30.    All the tips received by Plaintiff Ji were required to be turned in to Defendants. Defendants would then calculate Plaintiff Ji's share and pay him together with his hourly salaries every half month. Defendants' actual way of calculating Plaintiff Ji's tips was never correctly disclosed to Plaintiff Ji.

31.     About two to three months after Plaintiff Ji started working in Lan Ramen, Defendants told Plaintiff Ji that, when the daily business revenue of Lan Ramen exceeds $4,500, 15% of the tips they received beyond this $4,500 business revenue would be shared with kitchen workers and use to reimburse kitchen workers, because "they work really hard when there are more orders".

32.     However, waiters in Lan Ramen realized that their tips were deducted more than they were told including Plaintiff Ji. One day, Plaintiff Ji was discussing this with his coworkers who were maintaining records of the tips he received and was told that, for every $600 they made in tips, approximately $200 was retained by Defendants. Therefore, their tips were secretly retained by Defendants for about one-third (1/3) of the amount that they should have got.

33.     After finding out the fact that his tips were unlawfully retained and he was making less and less, Plaintiff Ji quitted Lan Ramen on or around October 15, 2019.

34.     Plaintiff Ji went back to Lan Ramen on or around November 1, 2019 because he needed a job.

35.     On or around November 1, 2019, Plaintiff Ji asked Defendants regarding receiving less and less tips. Defendant Xiao told him that 15% of their tips were retained by Defendants.

36.     At all relevant times, Plaintiff Ji was subject to a wage deduction for his meal time although Plaintiff Ji always had quick meals at work for about fifteen (15) to twenty (20) minutes during his employment with Defendants. Nor was Plaintiff provided with any wage statements demonstrating the amount of hours that were deducted from his wages for his meal time.

37.     At all relevant times, Plaintiff Ji was required to share his tips with other waiters as well as the owners of the restaurant, Defendants Xiao and Kenny.

38.    At all relevant times, Plaintiff Ji was not provided with any wage statements demonstrating his overtime compensations for his work hours in excess of forty (40) hours at a rate not less than one and one-half times the regular rate at which he was employed.

39.    At all relevant times, Plaintiff was not provided with any wage statements demonstrating how his tips were calculated or the total amount of tips he earned.

40.    At all relevant times, the calculation of Plaintiff Ji's tips and salaries was in Defendants' sole control.

41.    At all relevant times, Plaintiff Ji, together with other waiters, would manually sign in and sign out on a notebook that is kept by Defendants.

### ***Plaintiff Chen***

42.    From on or around May 15, 2018 to on or around February 15, 2020, Plaintiff Chen was hired by Defendants to work as a fry wok cook for Defendants' restaurant business located at 4-6 Hulfish St, Princeton, NJ 08542.

43.    From on or around May 15, 2018 to on or around February 15, 2020, Plaintiff Chen worked six (6) days a week. Plaintiff has the same schedule on every working day and usually took Monday or Tuesday off. He would start working uninterruptedly at the restaurant at 10:00 a.m., and finish his work at approximately 9:10 p.m. For lunch and dinner, Plaintiff Ji would quick eat meals at work, and it usually took him about ten (10) to fifteen (15) minutes. Therefore, from on or around May 15, 2018 to on or around February 15, 2020, Plaintiff Chen worked in total approximately sixty-seven (67) hours per week.

44.    Plaintiff Chen had the key to the kitchen during his employment with Defendants. He would usually open the kitchen at 10:00 a.m. and do preparation before the restaurant opens.

45.    There are two work schedules for employees in the kitchen. Some of them would work from 10:00 a.m. to approximately 9:10 p.m. and some of them would work from 11:00 a.m. to approximately 10:00 p.m. Plaintiff Chen worked on the first schedule because he was required to open the kitchen before the restaurant opens.

46.    Plaintiff Chen was paid twice a month in cash, in a fixed amount regardless of the hours he actually worked.

47.    From on or around May 15, 2018 to on or around October 15, 2018, Plaintiff Chen was paid in a fixed amount of $3,500 per month regardless of the hours he actually worked.

48.    From on or around October 15, 2018 to on or around February 28, 2019, Plaintiff Chen was paid in a fixed amount of $3,800 per month regardless of the hours he actually worked.

49.    From on or around March 1, 2019 to on or around February 15, 2020, Plaintiff Chen was paid in a fixed amount of $4,000 regardless of the hours he actually worked.

50.    Although Defendants claimed that the 15% deduction of the tips from the waiters were going to be shared with kitchen workers, Plaintiff Chen never received any tip shares.

51.    Defendants did not count or compensate Plaintiff Chen for overtime wages according to state and federal laws.

52.    Plaintiff Chen was never required to record his work hours or punch in and out to record his work time.

53.    Defendants committed the following alleged acts knowingly, intentionally and willfully.

54.    While employed by Defendants, Plaintiffs were not exempt under federal and state laws requiring employers to pay employees overtime.

55.    Defendants did not provide Plaintiffs and other employees with written notices about the terms and conditions of their employment upon hire in relation to their rate of pay, regular pay cycle and rate of overtime pay. Neither were Plaintiffs provided with any wage statements showing the calculation of their salaries for hours they worked in Lan Ramen.

56.    There was no valid agreement about tip pooling reached between Plaintiffs and Defendants.

57.    Defendants committed the foregoing acts against the Plaintiffs, the FLSA Collective Plaintiffs.

## COLLECTIVE ACTION ALLEGATIONS

58.    Defendants knowingly and willfully operated their business with a policy of not paying Plaintiffs and other similarly situated employees either the FLSA overtime rate (of time and one-half), or the New Jersey State overtime rate (of time and one-half), in violation of the FLSA and NYWHL and the supporting federal and New Jersey State Department of Labor Regulations.

59.    Plaintiffs bring this action individually and on behalf of all other and former non-exempt employees who have been or were employed by the Defendants for up to the last three (3) years, through entry of judgment in this case (the "Collective Action Period") and whom failed to receive overtime compensation for all hours worked in excess of forty (40) hours per week (the "Collective Action Members"), and have been subject to the same common decision, policy, and plan to not provide required wage notices at the time of hiring, in contravention to federal and state labor laws.

60.    Upon information and belief, the Collection Action Members are so numerous the joinder of all members is impracticable. The identity and precise number of such persons are unknown, and the facts upon which the calculations of that number may be ascertained are presently within the sole control of the Defendants. Upon information and belief, there are more than Twenty (20)

Collective Action members, who have worked for or have continued to work for the Defendants during the Collective Action Period, most of whom would not likely file individual suits because they fear retaliation, lack adequate financial resources, access to attorneys, or knowledge of their claims. Therefore, Plaintiffs submit that this case should be certified as a collection action under the FLSA, 29 U.S.C. §216(b).

61.    Plaintiffs will fairly and adequately protect the interests of the Collective Action Members, and have retained counsel that is experienced and competent in the field of employment law and class action litigation. Plaintiffs have no interests that are contrary to or in conflict with those members of this collective action.

62.    This action should be certified as collective action because the prosecution of separate action by individual members of the collective action would risk creating either inconsistent or varying adjudication with respect to individual members of this class that would as a practical matter be dispositive of the interest of the other members not party to the adjudication, or subsequently impair or impede their ability to protect their interests.

63.    A collective action is superior to other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. Furthermore, inasmuch as the damages suffered by individual Collective Action Members may be relatively small, the expense and burden of individual litigation makes it virtually impossible for the members of the collective action to individually seek redress for the wrongs done to them. There will be no difficulty in the management of this action as collective action.

64.    Questions of law and fact common to members of the collective action predominate over questions that may affect only individual members because Defendants have acted on grounds

generally applicable to all members. Among the questions of fact common to Plaintiff and other Collective Action Members are:

a. Whether the Defendants employed Collective Action members within the meaning of the FLSA;

b. Whether the Defendants failed to pay the Collective Action Members overtime wages for all hours worked above forty (40) each workweek in violation of the FLSA and the regulation promulgated thereunder;

c. Whether the Defendants' violations of the FLSA are willful as that terms is used within the context of the FLSA; and,

d. Whether the Defendants are liable for all damages claimed hereunder, including but not limited to compensatory, punitive, and statutory damages, interest, costs and disbursements and attorneys' fees.

65.    Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a collective action.

66.    Plaintiffs and others similarly situated have been substantially damaged by Defendants' unlawful conduct.

## STATEMENT OF CLAIM

### COUNT I

**[Violations of the Fair Labor Standards Act—Overtime Wages
Brought on behalf of the Plaintiffs and the FLSA Collective]**

67.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

68.     The FLSA provides that no employer engaged in commerce shall employ a covered employee for a work week longer than forty (40) hours unless such employee receives compensation for employment in excess of forty (40) hours at a rate not less than one and one-half times the regular rate at which he or she is employed, or one and one-half times the minimum wage, whichever is greater. 29 USC §207(a).

69.     The FLSA provides that any employer who violates the provisions of 29 U.S.C. §207 shall be liable to the employees affected in the amount of their unpaid overtime compensation, and in an additional equal amount as liquidated damages. 29 USC §216(b).

70.     Also, pursuant to NJWHL 12:56-6.1, for each hour of working time in excess of 40 hours in any week, except for those exemptions set forth in N.J.S.A. 34:11-56a4 or as provided in N.J.A.C. 12:56-7.1, every employer shall pay to each of his or her employees, wages at a rate of not less than 1 and ½ times such employee's regular hourly wage.

71.     Defendants' failure to pay Plaintiffs and the FLSA Collective their overtime pays violated the FLSA.

72.     Here, Plaintiff Ji worked seventy (70) hours a week from on or around May 1, 2018 to on or around May 14, 2018, then sixty (60) hours per week from on or around May 15, 2018 to on or around October 15, 2018, and then fifty-five (55) hours from on or around January 1, 2019 to on or around October 15, 2019, and from on or around November 1, 2019 to on or around December 15, 2019. At all relevant times, Plaintiff Ji was paid at a fixed rate per day regardless of the actual number of hours he worked every day.

73.     Plaintiff Chen worked approximately sixty-seven (67) hours per week from on or around May 15, 2018 to on or around February 15, 2020. At all relevant times, Plaintiff Chen was paid at a fixed monthly rate regardless of the actual number of hours he worked every day.

74.    Therefore, at all relevant times, Defendants had, and continue to have, a policy of practice of refusing to pay overtime compensation at the statutory rate of time and a half to Plaintiff and Collective Action Members for all hours worked in excess of forty (40) hours per workweek, which violated and continues to violate the FLSA, 29 U.S.C. §§201, et seq., including 29 U.S.C. §§207(a)(1) and 215(a).

75.    The FLSA and supporting regulations required employers to notify employees of employment law requirements. 29 C.F.R. §516.4.

76.    Defendants willfully failed to notify Plaintiffs and FLSA Collective of the requirements of the employment laws in order to facilitate their exploitation of Plaintiffs' and FLSA Collectives' labor.

77.    Defendants knowingly and willfully disregarded the provisions of the FLSA as evidenced by their failure to compensate Plaintiffs and the FLSA Collective the statutory overtime rate of time and one half for all hours worked in excess of forty (40) per week when they knew or should have known such was due and that failing to do so would financially injure the Plaintiffs and Collective Action members. Therefore, Plaintiffs and the FLSA collection shall recover from Defendants their unpaid overtime wages, and in an additional equal amount as liquidated damages.

## COUNT II

**[Violations of the NJWHL—Overtime Wages
Brought on behalf of Plaintiffs]**

78.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

79.    NJWHL 12:56-6.1 provides that, for each hour of working time in excess of 40 hours in any week, except for those exemptions set forth in N.J.S.A. 34:11-56a4 or as provided in N.J.A.C.

12:56-7.1, every employer shall pay to each of his or her employees, wages at a rate of not less than 1 and ½ times such employee's regular hourly wage.

80.    Defendants' failure to pay Plaintiffs their overtime pays violated the NJWHL.

81.    Here, as discussed above, Plaintiff Ji worked seventy (70) hours a week from on or around May 1, 2018 to on or around May 14, 2018, then sixty (60) hours per week from on or around May 15, 2018 to on or around October 15, 2018, and then fifty-five (55) hours from on or around January 1, 2019 to on or around October 15, 2019, and from on or around November 1, 2019 to on or around December 15, 2019. At all relevant times, Plaintiff Ji was paid at a fixed rate per day regardless of the actual number of hours he worked every day.

82.    Plaintiff Chen worked approximately sixty-seven (67) hours per week from on or around May 15, 2018 to on or around February 15, 2020. At all relevant times, Plaintiff Chen was paid at a fixed monthly rate regardless of the actual number of hours he worked every day.

83.    Therefore, at all relevant times, Defendants had, and continue to have, a policy of practice of refusing to pay overtime compensation at the statutory rate of time and a half to Plaintiffs for all hours worked in excess of forty (40) hours per workweek, which violated and continues to violate the NJWHL.

84.    The NJWHL and supporting regulations required employers to notify employees of employment law requirements. NJWHL 8:43E-8.6 et seq.

85.    Defendants willfully failed to notify Plaintiffs of the requirements of the employment laws in order to facilitate their exploitation of Plaintiffs' labor.

86.    Defendants knowingly and willfully disregarded the provisions of the NJWHL as evidenced by their failure to compensate Plaintiffs the statutory overtime rate of time and one half for all hours worked in excess of forty (40) per week when they knew or should have known such

was due and that failing to do so would financially injure the Plaintiffs. Therefore, Plaintiffs shall recover from Defendants their unpaid overtime wages, and in an additional equal amount as liquidated damages.

## COUNT III

### [Violations of the Fair Labor Standards Act—Unlawful Retention of Tips/ Gratuities Brought on behalf of the Plaintiff Ji and the FLSA Collective]

87.    29 USCS § 203 (e)(3)(m)(2)(B) requires that, "An employer may not keep tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit."

88.    Fact Sheet #15 under the FLSA further states that, "A valid tip pool may not include employees who do not customarily and regularly received tips, such as dishwashers, cooks, chefs, and janitors… The employer, however, must notify tipped employees of any required tip pool contribution amount, may only take a tip credit for the amount of tips each tipped employee ultimately receives, and may not retain any of the employees' tips for any other purpose."

89.    Here, firstly, Plaintiff Ji was informed that, when Lan Ramen's daily business revenue exceeds $4,500, 15% of tips received by him beyond this $4,500 would be shared with kitchen workers. Therefore, by including non-tipped kitchen workers, Defendants failed to establish a valid tip pool and such retention of tips violates the FLSA.

90.    Secondly, at all relevant times, Plaintiff Ji and the FLSA Collective were required to share tips with Defendants Xiao and Kenny, who are owners and managers of the restaurant. Therefore, Defendants failed to establish a valid tip pool and such retention of tips violates the FLSA.

91.    Thirdly, Defendants never notify Plaintiff Ji and the FLSA Collective their contribution amount to the tip pool. Therefore, Defendants' failure to notify Plaintiff Ji and the FLSA Collective their contribution amount to the tip pool violates the FLSA.

92.    Finally, the amount of tips that were retained by Defendants was significantly higher (approximately one third of tips received by Plaintiff Ji and the FLSA Collective) than Plaintiff Ji and the FLSA Collective were informed of (15% of tips received from the portion of Lan Ramen's business revenue that's above $4,500). Therefore, Defendants' unlawful retention of the amount of tips that Plaintiff Ji and the FLSA Collective never agreed to violates the FLSA.

93.    The FLSA and supporting regulations required employers to notify employees of employment law requirements. 29 C.F.R. §516.4.

94.    Defendants willfully failed to notify Plaintiffs and FLSA Collective of the requirements of the employment laws in order to facilitate their exploitation of Plaintiffs' and FLSA Collectives' labor.

95.    Defendants knowingly and willfully disregarded the provisions of the FLSA as evidenced by their unlawful retention of tips received by Plaintiff Ji and the FLSA Collective would financially injure Plaintiff Ji and Collective Action members. Therefore, Plaintiff Ji and the FLSA collection shall recover from Defendants their unlawfully retained tips, and in an additional equal amount as liquidated damages, according to 29 USC §216(b).

## **Prayer For Relief**

WHEREFORE, Plaintiffs, on behalf of themselves, and the FLSA collective, respectfully request that this court enter a judgment providing the following reliefs:

a)      Authorizing plaintiffs at the earliest possible time to give notice of this collective action, or that the court issue such notice, to all persons who are presently, or have been employed by defendants as non-exempt tipped or non-tipped employees. Such notice shall inform them that the civil notice has been filed, of the nature of the action, of their right to join this lawsuit if they believe they were denied proper hourly compensation and premium overtime wages;

b)      Certification of this case as a collective action pursuant to FLSA;

c)      Issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims and state claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b), and appointing Plaintiffs and their counsel to represent the Collective Action Members;

d)      A declaratory judgment that the practices complained of herein are unlawful under FLSA and NJWHL;

e)      An injunction against Lan Ramen Inc., its officers, agents, successors, employees, representatives, and any and all persons acting in concert with them as provided by law, from engaging in each of unlawful practices and policies set forth herein;

f)      An award of unpaid overtime wages due under FLSA and NYWHL, whichever is greater;

g)      An award of improperly retained tips or gratuities according to the FLSA.

h)      An award of liquidated and/or punitive damages as a result of Defendants' knowing and willful failure to pay overtime compensation pursuant to 29 U.S.C. §216;

i)      An award of liquidated and/ or punitive damages as a result of Defendants' willful

failure to pay overtime compensation pursuant to NJWHL;

j)      An award of liquidated and/or punitive damages as a result of Defendants' knowing and willful unlawful retention of tips or gratuities pursuant to the FLSA.

k)      An award of costs and expenses of this action together with reasonable attorneys' and expert fees pursuant to 29 U.S.C. §216(b) and NJWHL 34:11-56a25.;

l)      The cost and disbursements of this action;

m)     An award of prejudgment and post-judgment fees;  and

n)      Such other and further legal and equitable relief as this Court deems necessary, just, and proper.

Dated: Flushing, New York                    HANG & ASSOCIATES, PLLC.

September 17, 2020                            /s Qinyu Fan

                                             Qinyu Fan, Esq.
                                             136-20 38th Avenue, Suite 10G
                                             Flushing, New York 11354
                                             Tel: 718.353.8588
                                             qfan@hanglaw.com
                                             *Attorneys for Plaintiffs*

# **EXHIBIT 1**

## CONSENT TO SUE UNDER
## FEDERAL FAIR LABOR STANDARDS ACT

I am an employee currently or formerly employed by Lan Ramen Inc. and/or related entities and individuals. I consent to be a plaintiff in an action to collect unpaid overtime and minimum wages. I agree that I am bound by the terms of the Contingent Fee Retainer signed by the named plaintiff in this case.

_Ji weiJun_
Full Legal Name (Print)

_Ji weiJun_
Signature

_9/3/2020_
Date

## CONSENT TO SUE UNDER
## FEDERAL FAIR LABOR STANDARDS ACT

     I am an employee currently or formerly employed by Lan Ramen Inc and/or related entities and individuals. I consent to be a plaintiff in an action to collect unpaid overtime and minimum wages. I agree that I am bound by the terms of the Contingent Fee Retainer signed by the named plaintiff in this case.

hsi chieh chen
Full Legal Name (Print)

Signature

9/10 2020
Date